BAY LUMBER CO. v. SNELLING.
(No. 342.)

(Court of Civil Appeals of Texas. Beaumont. June 8, 1918. Rehearing Denied Oct. 9, 1918.)

1. ACCORD AND SATISFACTION ⬡⟺26(3)—DISPUTE AS TO AMOUNT DUE—SUFFICIENCY OF EVIDENCE.

In action against lumber company for balance due on piling contracts, where plaintiff had received from such company a voucher on its face that it was for balance in full and accord and satisfaction was claimed, evidence *held* insufficient to show a bona fide dispute as to amount due plaintiff.

2. SALES ⬡⟺288(2) — PERFORMANCE—WAIVER—ACCEPTANCE.

Where lumber company, having entered into piling contracts, accepts piling as performance of the contract without objection or complaint and uses and converts the timber, it cannot thereafter be heard to say that the piling delivered was not the piling called for by the terms of the contract.

3. APPEAL AND ERROR ⬡⟺173(1)—ISSUES NOT URGED IN LOWER COURT.

Where lumber company enters into two piling contracts with same party and accepts 300 extra pieces under and as part performance of the contracts, in latter's action to recover balance due on the contracts, the company cannot urge on appeal that it is liable as to excess only on implied contract, where it did not plead or urge such defense during trial.

4. APPEAL AND ERROR ⬡⟺218(1) — ASSIGNMENT OF ERROR — FAILURE TO EXCEPT TO GENERAL CHARGE — FAILURE TO REQUEST SPECIAL CHARGE.

An assignment of error attacking the verdict and judgment cannot be sustained, where appellant did not except to the general charge and did not request special charge covering the particular phase of the case covered by the assignment.

5. TRIAL ⬡⟺219—INSTRUCTIONS—REFUSAL TO DEFINE BONA FIDE CONTROVERSY.

In action for balance due on contracts, where court submitted special issue of whether there was bona fide dispute as to amount due plaintiff when he accepted defendant's voucher stating that it was for balance in full, court's refusal to give special charges defining "bona fide controversy" *held* not error.

6. PLEADING ⬡⟺237(6)—TRIAL AMENDMENT—ADMISSIBILITY OF EVIDENCE.

Where evidence as to modifications of a contract was objected to upon the ground that the pleadings did not support such evidence, the defect in the pleading could be cured by a trial amendment.

7. APPEAL AND ERROR ⬡⟺197(1)—OBJECTION TO EVIDENCE — RESERVATION IN LOWER COURT.

Objection to admissibility of evidence under the pleadings cannot be raised for first time in Court of Civil Appeals.

8. EVIDENCE ⬡⟺177—SECONDARY EVIDENCE—CARBON COPY OF LETTER.

Where original of letter showing terms of contract could not be produced, carbon copy *held* admissible.

9. TRIAL ⬡⟺350(4)—SPECIAL ISSUES.

In action against lumber company for balance due on piling contracts involving question of whether there was a dispute as to amount due plaintiff when he accepted defendant's voucher stating that it was for balance in full, refusal to submit requested special issue as to whether defendant's agent acted for protection of company when he refused to settle

with plaintiff until claim of third party, which he claimed could be set off against plaintiff, was settled, *held* no error.

10. TRIAL ⬡⟺350(4)—REQUESTED SPECIAL ISSUES.

In action against lumber company for balance due on piling contracts, refusal to submit requested special issue as to whether the piling plaintiff agreed to furnish by a certain contract was the piling described in a certain letter *held* no error.

11. APPEAL AND ERROR ⬡⟺994(2)—REVIEW—CREDIBILITY OF WITNESSES.

The credibility of witnesses was for the jury, not the appellate court.

12. APPEAL AND ERROR ⬡⟺995 — REVIEW—WEIGHT OF EVIDENCE.

The weight of the evidence is for the jury, not the appellate court.

Appeal from Harris County Court; W. E. Monteith, Judge.

Action by J. E. Snelling against the Bay Lumber Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Carothers & Brown, of Houston, for appellant. Fisher, Campbell & Amerman and G. P. Dougherty, all of Houston, for appellee.

BROOKE, J. This suit originated in the county court at law of Harris county, Tex., and was brought by the appellee, J. E. Snelling, against the appellant, Bay Lumber Company, to recover a balance of $333.68 alleged to be due on two piling contracts. The appellant answered by general denial and a special plea that there had been an accord and satisfaction; that there was a controversy as to an offset to appellee's claim, and appellant issued to appellee a voucher which stated on its face that it was for the balance in full, which voucher was received and accepted by the appellee as a payment in full and was cashed by him. The appellant, by supplemental petition, alleged that the agreed settlement was not binding, because there was no bona fide controversy between him and the Bay Lumber Company, and he also denied that the check was accepted by him as a payment in full. The trial court refused to peremptorily instruct a verdict for appellant, and submitted the case on special issues, as follows:

"Gentlemen of the Jury: The court submits this case to you upon special issues which you will answer as you find the fact to be in regard to each of said special issues hereinafter submitted on a separate sheet or sheets of paper, numbering your answer to correspond with the number of the issues submitted, being guided by the charge herein as to the law which the court gives you as applicable to the issues herein.

"Special issue No. 1: Do you, or do you not, find from the evidence that prior to or on the 15th day of June, 1915, the date on which voucher for the sum of $472.22 was given plaintiff by defendant, there was a bona fide dispute as to the amount due plaintiff by defendant? You will answer, 'There was,' or 'There was not,' as you find the fact to be." (To this question the jury answered, "There was not.")

"You are charged that the burden of proof is on the defendant to prove that there was a bona

---

⬡⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

fide dispute prior to or on the date of the issuing of said voucher.

"You are the exclusive judges of the facts proved, the credibility of the witnesses, and the weight to be given the testimony; but the law you are bound by your oaths to take from the charge of the court, which is herein given you and be governed thereby. Let your verdict be signed by your foreman."

"Special issue No. B, requested by the defendant: Did the defendant's agent, J. E. Sieber, at the time of the delivery of said voucher believe that the Bay Lumber Company was entitled to offset against Snelling any damages which Moore could offset against the Bay Lumber Company? The defendant requests the court to give the foregoing special charge No. B." (To this question the jury answered, "No.")

"Special charge No. C, requested by the defendant: Did the defendant's agent, J. E. Sieber, at the time of the delivery of such voucher believe that, unless Snelling agreed to an offset which would satisfy Moore, Moore could, with reasonable prospects of success, maintain a claim against the Bay Lumber Company for damages growing out of the Snelling piling contract or contracts? The defendant requests the court to give the foregoing special charge No. C." (To this question the jury answered, "No.")

Thereupon judgment was rendered in favor of the appellee for $333.68. Appellant's amended motion for new trial having been overruled, it perfected its appeal, and the case is now before this court by transfer.

Appellant's assignments of error Nos. 1 to 8, inclusive, will be considered together, as follows:

"(a) The court erred in refusing to give special charge No. 1 requested by the defendant, said special charge being substantially as follows: 'You are hereby charged to render a verdict in favor of the defendant.'

"(b) The finding of the jury in response to special issue No. 1 is contrary to and not supported by the evidence, in this: That the evidence conclusively shows that there was a bona fide dispute as to the amount due plaintiff by the defendant.

"(c) The finding of the jury in response to special issue No. 1 is contrary to the overwhelming preponderance of the evidence, in that the overwhelming preponderance of the evidence shows that there was a bona fide dispute as to the amount due plaintiff by defendant.

"(d) The court erred in submitting to the jury special issue No. 1, which special issue is substantially as follows: 'Do you or do you not find from the evidence that prior to or on the 15th day of June, 1915, the date on which the voucher for the sum of $472.22 was given plaintiff by defendant, there was a bona fide dispute as to the amount due plaintiff by defendant? You will answer, "There was," or, "There was not," as you find the fact to be.'

"(e) The finding of the jury in response to special issue B is contrary to and not supported by the evidence, in that the evidence conclusively shows that the time the defendant's agent, J. E. Sieber, delivered the voucher to J. E. Snelling, the defendant's agent, J. E. Sieber, believed that the Bay Lumber Company was entitled to offset against Snelling any damages which Moore could offset against the Bay Lumber Company.

"(f) The finding of the jury in response to special issue No. B is contrary to the overwhelming preponderance of the testimony, in that the overwhelming preponderance of the testimony shows that the defendant's agent, J. E. Sieber, at the time of the delivery of said voucher believed that the Bay Lumber Company was entitled to offset against Snelling any damages which Moore might offset against the Bay Lumber Company.

"(g) The finding of the jury in response to special issue No. C is contrary to and not supported by the evidence, in this: That the evidence conclusively shows that defendant's agent, J. E. Sieber, at the time of the delivery of said voucher believed that, unless Snelling agreed to an offset which would satisfy Moore, Moore with reasonable prospects of success could maintain a claim against the Bay Lumber Company for damages growing out of the Snelling piling contract or contracts.

"(h) The finding of the jury in response to special issue No. C is contrary to the overwhelming preponderance of the evidence, in this: That the overwhelming preponderance of the evidence shows that the defendant's agent, J. E. Sieber, at the time of the delivery of said voucher believed that, unless Snelling agreed to an offset which would satisfy Moore, Moore could, with reasonable prospects of success, maintain a claim against the Bay Lumber Company for damages growing out of the Snelling piling contract or contracts."

[1] Under these assignments are submitted several propositions by appellant, among others that it is claimed that the evidence conclusively showed that there was a bona fide dispute between appellant and appellee and an accord and satisfaction, and therefore that the court should have instructed a verdict in favor of the appellant; and also that as Snelling cashed the Bay Lumber Company check and retained the proceeds after he had ascertained that Moore would make no further adjustment on the disputed items, and as he made no attempt to reopen this matter with the Bay Lumber Company and did not offer to refund the proceeds of the check to the Bay Lumber Company so as to place the Bay Lumber Company in statu quo, and as Snelling delayed an unreasonable length of time and permitted the Bay Lumber Company to settle with Moore so as to make the loss fall entirely on the Bay Lumber Company if it is forced to pay the $333.68 to Snelling, it would be grossly inequitable to cancel the agreed settlement.

On the contrary, it is contended that a settlement of the debt for less than the face value of the debt must be based upon a valuable consideration of some kind, and, where there is no bona fide controversy as to the amount of the debt due, an agreement to accept less than the face value of the debt is entirely without consideration; and that when a party to a contract testified that after the performance of the contract by him, and after numerous delays by the other party to the contract to pay for the work done, and when finally demand was made for payment for the work done, offsets and counterclaims are for the first time set up, and that these counterclaims were never asserted or mentioned to him at any time while the work was being done, and he accepted the money offered in settlement, which was the amount of the debt less the offsets, with the statement that such offsets were fraudulent and that he intended to fight for the balance due, it cannot be said that there was a bona fide controversy, and a verdict so finding would be without evidence to support it.

With reference to these matters, without setting out the testimony in full, it will be sufficient to say that the plaintiff testified on the trial, among other things, that he completed the last contract for the delivery of piling on April 9, 1915, and that he went to the office of the Bay Lumber Company several times to make a settlement and collect the balance due to him on the two contracts, several times after that date, and that he was told each time that the Bay Lumber Company was waiting to receive a statement from Wm. Moore and would not settle with him (Snelling) until this statement was received, and that he went to the office of the Bay Lumber Company on or about June 15, 1915, and Mr. Elmer Sieber, secretary of the Bay Lumber Company told him that the Bay Lumber Company had received a statement from Mr. Moore, in which Moore claimed an offset, or counterclaim, of $150, for boat hired, and $187 as difference in price in piling that he had been compelled to buy in order to complete the contract, from a man by the name of Parker, and that he had paid Parker three-fourths of a cent per lineal foot more for piling than Snelling's contract called for, and that he had charged up these two items against the Bay Lumber Company, and Mr. Sieber told him that he would not pay him the balance due upon his contract unless, and until, he would agree to deduct these two items, as he stated that Moore would hold the Bay Lumber Company for these two items, and that he would not pay any part of the amount due Snelling unless Snelling agreed to deduct these two items, and that he (Snelling) had never heard of these two items before. No complaint had • ever been made against him by the Bay Lumber Company that he had been holding the barges an unnecessary and unreasonable length of time in order to load the piling, and he knew nothing about the purchase of the piling from Parker, and that he had fully performed his contract for the delivery of the piling, and he had never heard any complaint made that there was any shortage in the delivery of the piling while the piling was being delivered, and Snelling told Sieber that he would accept the check with the printed indorsement upon it if he (Sieber) would give him a debit memorandum showing the amount of the two items claimed as offset, and that he would take the matter up with Mr. Moore, and unless Mr. Moore would clear the matter up that he (Snelling) would fight them for the balance of the account.

It is true that, according to the testimony of Elmer Sieber, the Bay Lumber Company had received from Wm. Moore a claim of offset or counterclaim as against the account for piling delivered to him by Snelling for account of the Bay Lumber Company at the time he delivered to Snelling the check on or about June 15, 1915, and that he believed Moore would hold the Bay Lumber Company liable for these offsets or counterclaims when a settlement was made with Moore, but the jury evidently did not believe this testimony, and it was within their province, especially so in view of the fact that the contract between the Bay Lumber Company and Moore as to the piling delivered by Snelling was not offered in evidence on the trial of the case, and it therefore could not be determined what the rights of Moore were as to these piling as against the Bay Lumber Company. J. H. Sieber, president of the Bay Lumber Company, testified that, buying the piling from the appellee herein, the Bay Lumber Company was merely acting as the agent of Moore, and that his company made no profit out of the transaction. Sieber testified further that the Bay Lumber Company did not investigate the merits of the offsets asserted by Moore; that he merely accepted Moore's statements as true; that he had no intention of investigating the merits of the counterclaims, and, as he was making no profit out of the transaction, he was compelled to charge these offsets against Snelling, whether they were right or wrong.

We have gone over the statement of facts carefully, and have examined the statements of the several parties, in view of the assignments here urged, and have reached the conclusion that there is no merit in the assignments, and that they should be overruled. Bergman Produce Co. v. Brown, 156 S. W. 1102; Camden Fire Ins. Ass'n v. Baird, 187 S. W. 699.

The ninth assignment is as follows:

"The court erred in rendering judgment for plaintiff and against defendant for the sum of $333.56 because there is a fatal variance between plaintiff's allegations and proof, in this, that plaintiff alleges on or about December 8, 1914, he and the defendant entered into an express contract, whereby the plaintiff agreed and bound himself to sell and deliver certain timber, to wit, about 7,000 pieces of pine piling to the price of 4¾ cents per lineal foot and by virtue of this contract he delivered to the defendant 6,100 pieces of pine piling. In support of these allegations, the plaintiff testified that the piling which by his first contract of December, 1914, he agreed to deliver to the defendant was: 557 pieces 30 feet long, 6,487 pieces 35 feet long, 85 pieces 37 feet long, 107 pieces 40 feet long, and 28 pieces 47 feet long, making a total of 7,264 pieces of piling. While the piling which plaintiff actually delivered under this contract was: 409 pieces 30 feet long, 4,740 pieces 35 feet long, 651 pieces 40 feet long, and no piling 37 feet long, and no piling 47 feet long; aggregate amount of piling being 5,800 pieces. The plaintiff pleaded that he fully performed this contract, but the uncontradicted testimony, as above set forth, shows that he did not deliver the piling which he contracted to deliver. In his proof the plaintiff undertook to explain his failure to deliver the proper piling which he had contracted to deliver, by showing that his failure to deliver such piling was due to instructions given him by Moore's employés, from time to time, as the work progressed; but no such instructions were remotely suggested in the pleadings. There were no allegations of proof on which plaintiff could have recovered the market value of the piling furnished under a simple contract to pay the reasonable market value."

On the contrary, it is urged that in a suit upon a contract it is sufficient if the sub-

stance of the issue is established by the evidence.

The pleadings show, by plaintiff's first amended original petition, upon which the case was tried, that it was alleged that:

Plaintiff contracted with the defendant to sell and deliver "about 7,000 pieces of pine piling at the price of 4¾ cents per lineal feet; that plaintiff delivered to the defendant under said contract 6,100 pieces of pine pilings which were accepted by the defendant; that afterwards, to wit, on or about March 1, 1915, the plaintiff and defendant made and entered into a supplemental contract, wherein and whereby the plaintiff agreed to sell and deliver to the defendant an additional number of 1,900 pine piling of the same kind and at the same price as was provided in the original contract between plaintiff and defendant on or about December 8, 1914, and under this said supplemental contract the plaintiff sold and delivered to the defendant 2,200 piling, and under both contracts plaintiff sold and delivered to the defendant 8,019 pieces of piling, aggregating 284,277 feet of pine timber in the form of piling, for which defendant agreed and promised to pay to the plaintiff as consideration for said timber and piling the sum of $13,501.80.

"Plaintiff further represents to the court that he performed the said contracts with the defendant by delivering to the defendant 8,019 pieces of timber, same being pine piling, aggregating 284,277 feet called for by the said two contracts, for which the defendant agreed and bound himself to pay to the plaintiff the $13,501.80.

"Plaintiff further represents to the court that he has performed his said two contracts fully and in good faith, and was entitled to receive from the defendant the entire sum of $13,501.80 the contract price of said timber as hereinbefore alleged; that the defendant has paid to the plaintiff the sum of $13,168.12 upon said contract as a part of the purchase price of said timber sold and delivered by plaintiff to the defendant, but has failed and refused to pay plaintiff the entire amount of the contract price of said timber, as provided by the contract, and the defendant is still due and owing to the plaintiff upon said contract the sum of $333.68, and the defendant, although often requested so to do, has failed and refused, and still fails and refuses, to pay said sum of money to the plaintiff, or any part thereof.

"Wherefore, plaintiff prays that defendant be cited to appear in answer to this petition: That on final trial hereof, that he have judgment against the defendant for the sum of $333.68 and all costs of suit, and for any other and further relief to which he may be entitled in law or equity, and as in duty bound will ever pray."

[2] It seems from the foregoing allegations that the pleading does not describe the size or dimensions of the piling to be supplied by the contract, nor is the exact number fixed by the pleading. Both of the contracts are treated as one in the account attached to plaintiff's petition. The contract actually made on December 8, 1914, is set forth in a letter found in the statement of facts, by which Snelling agreed to deliver 7,264 pieces of piling of different sizes and lengths. The plaintiff alleges that he delivered 6,100 pieces under the first or original, and 2,200 under the supplemental contract of March 1, 1915. He testified on the trial of the case that, in making delivery of the piling, some of them were changed as to the length under the defendant's instruction. The undisputed proof in the case is that all of the piling described in the plaintiff's petition were delivered to and accepted by the defendant under and by virtue of the contract; none of the piling offered for delivery under the contract were rejected. The defendant having received and accepted the piling as performance of the contract, without objection or complaint, and having used and converted the timber, it cannot be heard now to say that the contract was not performed in that the piling delivered were not the piling called for by the terms of the contract. In addition, the defendant did not except to the submission of the case to the jury on the ground of variance, and did not request a special charge on this question. We are unable to discover any merit in this assignment, and it is therefore overruled.

The tenth assignment is as follows:

"The court erred in rendering judgment in favor of the plaintiff and against the defendant for $333.58, because such judgment finds no support in the pleadings and the facts in this: The plaintiff pleads that on March 1, 1915, plaintiff and defendant made an express contract, whereby the plaintiff contracted to sell to the defendant 1,900 sticks of pine piling at 4¾ cents per lineal foot; that under this supplemental contract the plaintiff delivered to the defendant 2,200 pieces of pine piling, that is, 300 pieces more than were covered by the express contract between plaintiff and defendant. There is no allegation or proof that plaintiff expressly agreed to pay the defendant 4¾ cents per lineal foot for this 300 pieces of piling not covered by the express contract, nor is there allegation or proof as to what was the reasonable market value of the 300 pieces of piling not covered by the express contract. The allegations and the proof also fail to show the dimensions of the 1,900 sticks covered by the express contract and the 300 additional pieces not covered by the express contract and upon which there was no agreed price."

[3] There being two express contracts between plaintiff and defendant for the delivery of piling, one for 7,264 pieces and another for 1,900 pieces, and it appearing that 6,100 pieces were delivered under the first contract and 2,200 were delivered under the second contract, it is urged that it should be presumed, in the absence of allegation and proof of other contracts, that all of the piling delivered was delivered under the two contracts. The first contract between the plaintiff on December 18th called for 7,264 pieces of piling, and the second, of March 1, 1915, called for 1,900 pieces. It is urged in the petition that he delivered 6,100 under the first and 2,200 under the second contract. There were no allegations or proof of any other contracts between the parties. It is admitted by all parties that all of the piling delivered was delivered by the plaintiff and accepted by the defendant under these two contracts. The defendant did not request any special charge on the question, and did not except to the submission of the issue involving the question of liability for the 300 pieces of piling. It seems therefore that the defendant asked this court to reverse the judgment of the trial court, for the reason, among others, that it is alleged in plaintiff's

petition that the second contract was to deliver. 1,900 pieces of piling, and that in fact, 2,200 were delivered, and that, as to the 300 extra pieces delivered the defendant was liable only upon an implied contract for the reasonable market value of the timber. We think that, under the peculiar facts of this case, it must be held that the 300 pieces of piling were delivered under one or both of the express contracts. The first contract provided as above said, and it is alleged that the terms of the second contract are the same as the first as to price and size of the piling to be delivered. If the defendant accepted the 300 extra pieces under and as a part of the performance of said two contracts, in our opinion it cannot be heard to say at this time that it is only liable upon an implied contract as to excess. No defense of this kind was pleaded or urged in the trial court, and, as above said, no special charge was requested instructing the jury as to the liability of the defendant for 300 pieces of piling, and the defendant having failed to except to the submission of the issue involving the 300 extra pieces of piling, in our opinion, it could not raise the question in this court for the first time. The assignment, therefore, is overruled.

The eleventh assignment of error complains that the court erred in rendering judgment in favor of the plaintiff because the undisputed evidence shows that plaintiff did not comply with his contract of December 8, 1914, and there was no pleading whereby plaintiff offered any excuse for his failure to comply with such contract, and the plaintiff is not therefore entitled to recover the contract price which he alleges the defendant agreed to pay him for the piling alleged to have been delivered under the contract of December, 1914.

The proposition is that, where the plaintiff sues on an express contract which he alleges was fully performed and pleads no excuse for his failure to perform the express contract, he cannot recover on proof that the express contract was not performed, but was subsequently changed by the parties, and that the plaintiff performed the contract as changed.

[4] The reply to this is that the general charge of the court was not excepted to and no special charges were requested presenting this particular phase of the case, and that the assignments of error attacking the verdict and judgment cannot be sustained. We find no merit in this assignment, and it is overruled.

The twelfth, thirteenth, and fourteenth assignments of error will be considered together, as follows:

(a) "The court erred in refusing to give special charge No. 2, requested by the defendant; said special charge being substantially as follows: 'On the issue of good faith, you are charged that if you find from the evidence that Moore was claiming to the Bay Lumber Company that the piling had not been delivered in ac-

cordance with the contract, and that the barges and tug had been delayed at Green's bayou, and that the delay, if any, was in violation of the contract, and if you further find that Moore was claiming damages from the Bay Lumber Company on this account, and could probably recover damages from the Bay Lumber Company, and that he was entitled to charge against Snelling any damages which Moore might collect from the Bay Lumber Company, then the act of the Bay Lumber Company in declining to make a settlement with Snelling until this damage claim was adjusted was an act of good faith even though Moore was not in fact entitled to an offset against the Bay Lumber Company, and the Bay Lumber Company was not in fact entitled to an offset against Snelling.' "

(b) "The court erred in refusing to give special charge No. 3, requested by the defendant; said special charge being substantially as follows: 'On the issue of bona fides, you are charged as follows: If the Bay Lumber Company believed in good faith that there was a controversy in regard to the account which ought to be settled before final settlement was made, then the dispute was bona fide, and it was immaterial whether the Bay Lumber Company was in fact right or wrong in the contention being urged by them if such contentions were urged in good faith.' "

(c) "The court erred in refusing to give to the jury a proper charge, defining what, under the law as applied to the facts in this case, would constitute a bona fide dispute between plaintiff and defendant, after the court's attention had been drawn to this omission by the exception to the court's main charge by special issues Nos. 2 and 3 requested by the defendant."

The trial court, at the request of the defendant, gave the two following special instructions in the form of special issues, to-wit:

"Special charge No. B, requested by the defendant: Did the defendant's agent, J. E. Sieber, at the time of the delivery of said voucher believe that the Bay Lumber Company was entitled to offset against Snelling any damages which Moore could offset against the Bay Lumber Company?"

"Special charge No. C, requested by the defendant: Did the defendant's agent, J. E. Sieber, at the time of the delivery of such voucher believe that, unless Snelling agreed to an offset which would satisfy Moore, Moore could, with reasonable prospects of success, maintain a claim against the Bay Lumber Company for damages growing out of the Snelling piling contract or contracts?"

[5] After giving the foregoing special instructions, the trial court seemed to be of the opinion that there was no necessity for a definition of a bona fide controversy. By the first special issue submitted, the plain question is asked the jury: "Was there a bona fide dispute as to the amount due plaintiff by defendant?" To this question the jury answered, "No." The special charges refused by the court and complained of undertake to define to the jury a "bona fide controversy." It seems that the court was of the opinion that this was so simple that the jury understood the meaning of the words "bona fide." We are of opinion that there was no error in this action of the court. The assignments, therefore, are overruled.

The fifteenth assignment is as follows:

"The court erred in admitting in evidence over the defendant's objection that part of the testimony of plaintiff Snelling wherein he testified

that, after J. E. Sieber handed Snelling the check for $472.22, Snelling told Sieber that he (Snelling) was going to Texas City and would see Mr. Moore, and, 'if that was due Mr. Moore he would pay it, and if Mr. Moore didn't pay me (Snelling) they were going to fight them for it.' That Snelling left the office of the Bay Lumber Company with that understanding."

It is urged that where an original letter is not sued upon as a written contract, but is merely used to describe the subject-matter of the contract, a copy of such letter is admissible for such purpose where the party offering the copy is not in possession of the original and cannot produce it and the original letter is in possession of the opposite party or under its control.

We do not believe that there is any merit in this assignment, and therefore it is overruled. Snelling testified that this letter was written in the office of the Bay Lumber Company, and both J. E. Sieber, the secretary, and J. H. Sieber, the president of Bay Lumber Company, assisted in the preparation of this letter, and the letter was signed by Snelling and delivered to Sieber to be transmitted to Moore, and in said letter was embodied the terms of a contract made by Snelling with Moore the day before by parol. The carbon copy of the letter offered in evidence was found among the files of the Bay Lumber Company on the first trial of the case. Snelling testified that he did not have the original letter in his possession and that he could not produce it, and that he had delivered the original to the Bay Lumber Company, to be sent to Moore. Moore denied receiving the letter.

The sixteenth assignment of error complains that the court erred in refusing to permit the defendant to prove by the witness William Moore that his foreman, Philbert, had reported to Moore from time to time that, whenever Philbert ordered the barges for the timber which Snelling was getting out, he did so under the instructions of Snelling, and that the barges were never ordered out until Mr. Snelling claimed that he was ready to load them and requested that they be sent up.

It is urged that, where an original contract has been modified by supplemental agreement, it is error to submit to the jury the question as to whether or not the original contract has been performed without taking into consideration the modifications of the contract. The plaintiff's testimony was that the contract between plaintiff and defendant, as shown by the copy of the letter in evidence dated November 25, 1914, was modified several times by defendant requesting that the dimensions of the piling be changed in several instances and which was done, and that the contract was not performed as provided in the letter for this reason.

[6, 7] On the trial of the case no objection was raised to the introduction of evidence to show that the contract of November 25, 1918, as provided in the copy of the letter in evidence, had been modified in several particulars by agreement upon the ground that the pleadings did not support such evidence, and objection is first found in the amended motion for a new trial. If such objection had been made and sustained, the plaintiff could have filed a trial amendment curing such defect, if any, in the pleading. At least, in our judgment, it should not be heard to make the objection for the first time in this court. The assignment is overruled.

The seventeenth, eighteenth, and nineteenth assignments are as follows:

(a) "The court erred in admitting in evidence over the defendant's objection the purported carbon copy of the letter dated November 25, 1914."

(b) "The court erred in refusing to submit to the jury special issue No. D, requested by the defendant; said special issue being substantially as follows: 'Was J. E. Sieber acting for the protection of the Bay Lumber Company when he declined to make a final settlement with Snelling until the Moore claim was settled?'"

(c) "The court erred in refusing to submit to the jury special issue No. E, requested by the defendant; said special charge being essentially as follows: 'When Snelling made his contract in December, 1914, was the piling that he had agreed to furnish the piling described in carbon copy of a letter dated November 25, 1914?'"

[8-10] We have carefully examined the assignments, and are of opinion that there is no merit in the same, and they are therefore overruled.

[11, 12] The trouble about which much complaint seems to have been made is that the jury did not pay very much regard to the testimony of the witnesses for appellant. In fact, it is very apparent from this record that they believed the appellee's witnesses, and either partially or totally disregarded the evidence of many of the witnesses for the appellant. No member of this court was present at the trial of the case; therefore, we are guided entirely by the record as presented here. The trial court saw the witnesses, heard them testify, presented the issues to the jury, and the jury were the judges of the credibility of the witnesses and the weight and value to be given to their testimony. They decided against the appellant, and we are not able to say, in the light of this record, that they were not justified in so finding.

We have examined the record in this carefully, and find no error on the part of the trial court which would justify us in reversing and remanding this cause. The judgment of the lower court is therefore in all things affirmed.